## Case No. 400.

### The ANNA.

[Blatchf. Prize Cas. 332.][1]

District Court, S. D. New York. March 26, 1863.

PRIZE—SAILING UNDER ENEMY'S FLAG.

Vessel and cargo condemned as enemy property, sailing under the enemy's flag, and under passes from the enemy.

In admiralty.

BETTS, District Judge. The libel, filed March 5, 1862, alleges the capture of the steamer and cargo, as prize, November 22, 1861, in Mississippi sound, between Biloxi and Ocean Spring, by the United States steamer New London. The vessel was appraised by a naval survey, December 26, thereafter, and appropriated to the use of libellants, and the cargo was transmitted by another vessel to this port, for adjudication. A decree by default was rendered against both vessel and cargo, March 24, 1863, and the vessel's papers and the proofs in preparatorio have been laid before the court, to determine the liability of the captured property to confiscation.

The steamer was enrolled and licensed to citizens of the Confederate States, under the laws of those states, July 1, 1861, and was in the employ of such citizens when seized. The master testifies, on his examination, that the vessel was, when captured, sailing under the Confederate flag, and had no other on board; that he is a citizen and a resident of a Confederate state; that the vessel was engaged in trade between the ports of Pascagoula and New Orleans; that he was part owner of the vessel, and had an adventure in the cargo; and that he knew of the war and that those ports were under blockade. The witnesses examined, all of them, knew of the war and that those ports were under blockade.

It being thus demonstrated that the vessel and cargo were enemy property, sailing in the interest of the enemy, with the aid of passes from and protection of the flag of the enemy, the property captured is plainly prize of war; and, no defence being interposed, a decree of condemnation and forfeiture is directed to be entered.

---

## Case No. 401.

### The ANNA.

[10 Blatchf. 456.][2]

Circuit Court, E. D. New York. Feb. 25, 1873.

SALVAGE—DERELICT—APPORTIONMENT—DISCRETION OF THE COURT.

1. A vessel, having been in collision and injured, was abandoned by her master and crew,

---

[1][Reported by Samuel Blatchford, Esq.]
[2][Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

as sinking, about twenty miles to the eastward of Sandy Hook. She was afterwards discovered by another vessel, and brought safely into New York, with her cargo. The value of the saved vessel and her freight and cargo was $34,589 06. The district court allowed $6,000, as salvage, which included $600 paid by the salvors to a tug, for towing the saved vessel; Held, that, on all the evidence, the allowance was not excessive.

[Cited in The Loveland, 5 Fed. 108.]

2. The discretion of the district court, in fixing the amount of salvage, is not to be overruled, when no principle of law has been violated, unless the error is very clear.

[In admiralty. Libel by the owners of the bark Wiley Smith to recover salvage of the brig Anna and her cargo. Decree for libellant. Case No. 398. Claimants appeal. Affirmed.]

William R. Darling, William W. Goodrich, and Charles Donohue, for libellants.

Townsend Scudder, for claimants.

WOODRUFF, Circuit Judge. The evidence shows, that the brig Anna, having come into collision with another vessel, at about 11 o'clock in the night of the 9th of April, 1872, and been injured, her master and crew, under the apprehension that she was sinking, escaped from her to the colliding vessel, and were brought into this port, to which she was bound. At the time of the collision, she was about twenty miles to the eastward of Sandy Hook, the night was very foggy, "the thickest," her master and owner testifies, that he ever saw, it was blowing hard, from the southwest, and she was under "close reefs." Contrary to the expectation of her master and crew, she did not sink, but, in the morning, she was discovered by the master and crew of the brig Wiley Smith, tossed by the waves, driven off ten or fifteen miles further from Sandy Hook, and near to the Long island shore, and in great danger of going on the Long island beach, upon which, the master of the Wiley Smith says, she would have driven within an hour. The wind had somewhat abated, but it was still blowing fresh from the southwest. Perceiving that she was a vessel in distress; the Wiley Smith was hove to, and sent her mate and one of her crew on board, (the Wiley Smith having, in all, captain, mate, and four seamen,) and it was agreed, that the mate and man should remain on board and endeavor to save the injured vessel. They succeeded in getting her under sail, and directed her towards this port, and, after making some progress, were hailed by a tug, with the master of which they bargained for towage to New York, for six hundred dollars, and she was towed in. The Wiley Smith also arrived here in safety. The Anna was conceded to be of the value of $7,500, though she was afterwards sold for less, and the net value of her cargo was $25,589.06, and the freight was $1,500, as was also conceded, making, in all, $34,589.06. The libels herein being

filed by the owners, master and crew of the Wiley Smith, for salvage, the district court allowed to them the sum of $6,000, (including therein the sum paid for the service of the tug.) The claimants of the Anna and her cargo have appealed to this court, claiming that the allowance is excessive.

The discretion of the district court, in fixing the amount of salvage, is not to be overruled, where no principle of law has been violated, unless the error is very clear. The amount allowed is, no doubt, liberal, if the time and service by the Wiley Smith, or even her danger, were alone considered; while, on the other hand, considering the state of the weather, the probable destruction of the Anna, the diminution of hands on the Wiley Smith, the hazard of her own insurance, and the importance of the service to the owners of the Anna and her cargo, it does not seem to me extravagant. Very true, she might possibly have been saved by other means. Possibly, her master, on arriving in New York, in the morning, might have gone, or sent a vessel, in search of her, and, perhaps, have procured one for a much less compensation. But this is a mere conjecture. He and his crew had left her, believing that she was sinking, and it does not appear that they thought otherwise, until they saw her under sail, in the hands of the finders. That, whether regarded as finders of a derelict, or salvors of a vessel being driven on shore, the libellants are entitled to salvage, is not, and cannot be, denied. To this it is not necessary to cite the authorities, numerous as they are on that point.

A narrow and inadequate appreciation of such services as were here rendered would not sufficiently encourage vessels and their crews to depart from their own voyage, to save the property, and, as the case may be, the lives of others. Confessedly, the share of the property allowed is greatly less than the early practice of courts of admiralty would have sanctioned, and, in the changed condition of navigation, it is properly so; but, I do not feel warranted in saying, that the share allowed, (but little over one-sixth,) is so great, that this court should reduce it.

Let the libellants have a decree for the sums awarded, with costs.

---

## Case No. 402.

### The ANNA.
### The REVERE.
### The ANNIE DEAS.
[Blatchf. Prize Cas. 337.][1]

District Court, S. D. New York. April 16, 1863.

PRIZE COURT—DISTRICT ATTORNEY'S FEES—COSTS.

1. The question of the allowance of costs and fees to the district attorney for services in prize cases considered.

---

[1][Reported by Samuel Blatchford, Esq.]

2. The prize court is, and always has been, in the United States a component part of the admiralty court.

3. In prosecuting in prize cases, the district attorney acts as the law officer of the government, and not in any other capacity.

4. As the district attorney is compensated by fees and emoluments limited by law to a fixed salary, he cannot have any additional allowance for extra services within the scope of his appointment, unless such extra reward is expressly authorized by law.

5. The act of August 6, 1861, [12 Stat. 317,] in regard to the compensation of the district attorney, discussed.

6. The act of March 25, 1862, § 3, [12 Stat. 375,] does not abolish the restrictions on the compensation of the district attorney, or give to him for his personal use the amounts taxed to him for services in prize cases.

7. The acts of July 17, 1862, [12 Stat. 607,] and March 3, 1863, [12 Stat. 741,] show that the restrictions on the compensation of the district attorney are still in force.

8. The court will not apportion to the district attorney, by a direct decree, the amount of the costs taxed for his services in each prize suit which ought to be paid to him toward his aggregate salary.

9. The court will tax the costs of the district attorney in prize cases, under the existing laws, on the written assent of the counsel for the captors, and the deposition of the district attorney, proving the performance of the service and its reasonable value, and will leave it to the disbursing officers of the treasury to see that no more is retained by that officer than the sum given him by law.

In admiralty.

BETTS, District Judge. The three above-named suits having terminated some time since by decrees of condemnation of the several vessels and their cargoes, the district attorney presented his several bills of costs therein to the court for taxation, attesting, by his own deposition, the actual rendition of the respective services charged by him in each case or proceeding and their just value; and he submitted, with each bill of costs, a written admission of the counsel for the captors, of service upon him, by the district attorney, of a copy thereof, and his assent to the correctness and justness of the items as charged.

Having information that congress, in closing its late session, adopted some enactments which might have a bearing materially affecting the allowance of costs to the officers of the court in prize proceedings, and especially those to be taxed to the district attorney of this district, I deferred acting upon the above taxations until authentic copies of such legislation might be furnished to the court. This delay was not under an expectation that congress had varied the law governing the destination of the forfeited funds to the captors and navy pensioners, but that they might have made more clear their intentions in respect to the method by which the restriction or limitation of the compensation to the officers of court is to be observed and carried into effect through the