## THE BARK LOVETAND, her Cargo, etc.

*(District Court, S. D. New York.* November, 1880.

1. SALVAGE—DAMAGES—FREIGHT PREPAID—APPORTIONMENT.

The Norwegian bark L. collided with the British ship R. a **short** distance to the southward of Nantucket South Shoal light-ship, whereby she lost everything above deck and was thereupon abandoned by her crew. Not long afterwards, in the morning of April 17, 1880, she was sighted by the British steamer T., and the master of the T., after putting a crew aboard the L. and making three hawsers fast to her with difficulty, the sea being rough and the wind high, commenced towing. Two of the hawsers parted at midnight, and the third slipped, thus compelling the T. to lay by the L. till daylight. The hawsers being again made fast after much difficulty, owing to their having fouled the T.'s propeller, the towing was again resumed in the afternoon, and the T., without further accident or delay, reached Sandy Hook on the morning of the 19th with the L. in tow. The service rendered, which was attended with difficulty and danger to the crew, occupied the T. 51 hours. The distance towed was 325 miles in 37 hours, the average speed being about $8\frac{3}{4}$ knots. Her maximum speed in ballast was $12\frac{1}{2}$ knots, and her speed at the time of discovering the wreck about 10 knots.

The T. was a freighting steamer of 1,547 tons, running between London and New York, at the time bound from Cardiff to New York in ballast, with a crew of 36 men, having 18 others (cattlemen) on board who had gone out on her last voyage in charge of cargo. The wind during the time of towing and before the discovery was nearly ahead. The L. was 404 tons register, valued at $1,400; her cargo at $22,500, in good order when discovered and so delivered. Her freight was valued at about $1,600, part of which had been prepaid. When discovered she had 30 inches of water in her hold, and was not in a sinking condition.

*Held,* that while the claim of the libellants for more than one-half of the value of the property saved is very extravagant, and not in accordance with the present practice of admiralty courts in similar cases, still the case is one of great merit, the bark being derelict, and the principle should be followed, giving a fair and liberal reward for the time and labor, the dangers encountered, and the property saved.

*Port* v. *Jones,* 19 How. 150.

That the sum of $7,000 is a proper award ; $350 thereof **to go to the** master, and $3,325 to the owners of the T. The remaining $3,325 to be apportioned among her officers and crew, including the master and those of the cattlemen who took part in the service in propor-

tion to their respective wages, they ranking for this purpose as ordinary seamen.

Also *held*, that the presumption is that prepaid freight can be recovered back as not earned in case of the loss of the cargo, and therefore should be considered as part of the property saved to the owners of the ship.

*E. L. Owen*, for libellants.

*S. B. Ransom*, for petitioner Riley.

*Henry T. Wing*, for claimants of vessel.

*Lorenzo Ullo*, for claimants of cargo.

CHOATE, D. J. This is a suit for salvage. The libel was filed by the owners of the British steam-ship Thanemore and her master, for themselves and all others entitled, against the Norwegian bark Lovetand, her freight and cargo. The Lovetand, of 404 tons register, being on a voyage with a cargo of fruit from Messina to New York, came into collision with the British ship Rimsdal in about latitude 40 deg. N. and longitude 70 deg. W., a short distance to the southward of the Nantucket South Shoal light-ship, whereby all the masts spars, sails, and everything above deck on the bark were carried away, and she was left in such a condition that her master and crew abandoned her and went on board the Rimsdal, which was bound for Liverpool. Not long after she was abandoned, she was, early in the morning of the seventeenth of April, 1880, sighted by the Thanemore. The master of the Thanemore, seeing that she was a wreck, sent his second officer and three or four men in a boat to board her, to ascertain if there was anybody on board. Upon the report of the mate that there was nothing alive on board, and that she had a cargo of fruit, the master of the Thanemore, after some hesitation on account of the state of the sea and the weather, determined to attempt to tow her into port. The Thanemore was a freighting steamer of 1,547 tons register, running between London and New York, and was then bound from Cardiff for New York in ballast, with a crew of 36 men, all told, and with 18 men on board who had gone out in her on her last voyage in charge of her cargo of cattle. After several hours' labor, and with no little difficulty, owing to the high

sea that was running and the strong wind, they succeeded in getting three hawsers made fast to the bark, on which was placed a crew consisting of the second mate and several men, and she was towed towards New York. After getting under way a dense fog set in, which continued till about 9 o'clock at night. At about midnight two of the hawsers parted and the third slipped, owing to the heavy sea. The steamer lay by the bark till daylight and then commenced again to get her hawsers on board the bark. This was not effected till about 1 o'clock in the afternoon. In attempting to do this the hawsers fouled the propeller, and it was a difficult and tedious operation to clear the propeller. The towing was resumed a little after 1 o'clock, and was continued without further accident or interruption till they passed Sandy Hook at about 10 o'clock on the forenoon of the nineteenth of April. The value of the bark was $1,400; of her cargo, $22,500; and of her freight, $1,600, less some small deductions for port charges. A part of the freight had been prepaid. The claimants argue that such part is not to be computed as part of the property saved. I think, however, that the presumption is that prepaid freight can be recovered back as not earned if the cargo is lost, and therefore that it should be considered as part of the property saved to the owner of the ship. When the bark was discovered she had 30 inches of water in her. She was not in a sinking condition. Her cargo was in good order, and was so delivered in New York. The service rendered occupied from 7 A. M. of the 17th to 10 A. M. of the 19th of April, or 51 hours. The bark was towed about 325 miles, and the time occupied in towing was about 37 hours, or at an average speed of about 8¾ miles. The Thanemore was making about 10 knots when she discovered the bark. Her maximum speed in ballast is about 12½ knots. During all the time she had the bark in tow, as well as at the time of discovering her, she had an unfavorable wind nearly ahead. The service was attended with considerable difficulty and some danger to the crew and to the steam-ship. I am satisfied, however, by the log and by the speed made, that the danger and the difficulty are somewhat exaggerated by the witnesses;

still, it is a case of great merit. The bark was derelict, and in such cases the reward should be liberal. *The Anna,* 10 Blatchf. 456. The claim of the libellants, however, that they should have more than one-half of the value of the property saved is very extravagant, and not in accordance with the present practice of courts of admiralty in cases like this. The principle is that a fair and liberal reward is given for the time and labor, the dangers encountered, and the property saved. *Post* v. *Jones,* 19 How. 150.

In this case I think the sum of $7,000 will be a proper award. Of this sum, $350 is awarded to the master, and $3,325 to the owners of the steamer. The remaining $3,325 will be apportioned among the officers and crew of the steamer, including the master and those of the cattlemen who took part in the service, in proportion to their respective wages, the cattlemen ranking for this purpose as ordinary seamen. As the proofs do not show which of the cattlemen are entitled except the petitioner Wiley, who has been joined as co-libellant, and as the libel alleges that three of the crew deserted in New York, of which no proof has been given, a reference will be had to determine this apportionment among the crew.

Decree accordingly, with costs to libellants.